And our final case this morning is No. 24-1845, J.R. Simplot Co. v. McCain Foods. Okay, Ms. Sweezy. Good morning, Your Honors. May it please the Court. I'd like to start with the 112 issues and then touch on the two infringement issues. And on Section 112, the District Court took factual questions away from the jury, and it got the law wrong in the process. It made three fundamental mistakes. First, it isolated pieces of the claim language, divorced from each other without looking at the claim in the full context. It's a one-step, one-limitation claim. Second, it misunderstood functional claiming and functional boundaries. And third, it picked sides on competing expert testimony, which is exactly what cannot happen at summary judgment. And if you look at the District Court's footnote on appendix 50, footnote 22, you'll see this is an excellent example of how the District Court committed errors when it dismissed 16 pages of our expert's testimony. So in that footnote, it dismisses detailed, specific, factual evidence from our expert, Dr. Floros, and his testimony that's cited there is at appendix 7391 to 7406, where he detailed what the person of ordinary skill in the art knows, what the background is of the person of ordinary skill in the art, how they can balance the parameters that are at issue in the claims he responded to. In terms of indefiniteness, where's the testimony that someone of ordinary skill in the art would know what was meant by resistance to cutting and how to measure it? There's a reference to a mechanism for measurement, but I don't see any testimony about how someone of skill in the art would know when the resistance level had been achieved. Your Honor, I'll find you that testimony. And I want to start with the patent, though, because the patent itself in column 3, and this is at appendix 150, says that you use a texturometer. This is a known device. The patent also suggests that reducing the resistance to cutting requires something more in terms of what's required to be shown. Your Honor, you might be referring to the not heating too much piece of it. No, no, no. The qualitative assessments were performed, and they talked about guaranteeing a sheer cut, and, you know, there's all sorts of discussion here about what might be measured by this device. And I don't see any expert testimony telling us how someone would know what was meant by all of that and when that was achieved. Your Honor, if you look at, for instance, appendix 7397, that's carrying over from paragraph 611, Dr. Flores specifically talks about the objective measurement of a texturometer, that that was known in the field. Okay, yeah, the measurement device was known, but where's the testimony that someone opposing would know when the resistance, reducing the resistance had been achieved? That is what the texturometer does. No, I understand. Okay. But what is it, that's not the question. I understand there's a texturometer. What's the evidence as to how someone skilled in the art would know when the level of reducing resistance had been achieved? Because the patent talks about all sorts of things that, you know, like the sheer cut and so on and so forth, that would be encompassed within that. Your Honor, the texturometer is, I know, if I can just respond on this point, because it's a specific device that's known in the prior art. I understand that. That's not the question I'm asking. I'm asking you is how is someone supposed to know when the objective or the claim limitation has been achieved using the texturometer? What, you know, what is it, what's the measurement? The measurement will depend on the produce, right? So this is a process that cuts across all fruits and vegetables because what matters is the new use of a known technology. And the texturometer and the person of ordinary skill in the art using it would understand, in addition to the qualitative assessment, you know, you can actually touch the potato and feel that it's easier to cut. Okay, but that sounds like something that's indefinite, a qualitative assessment. But the patent goes on and says you can use a texturometer as a quantitative measurement. It doesn't need to specify specific parameters for each produce because that is known in the field, with our experts saying that a person of ordinary skill in the art is familiar with this device and exactly what the texturometer measures. And it's going to vary. Maybe I can point you to an analogy that our expert used. What kind of reading does a texturometer give you? A numerical reading. Does the patent specification give a range of values for the texturometer's numerical value that would be desirable? No, it doesn't. But, again, this is a tool like a thermometer, right? A thermometer outputs a numerical value. Sure, but a thermometer may have a value, but that value may not tell you whether something's sufficiently done or not. And that's going to depend upon a lot of different things, including what doneness is desired for that particular meat or whatever. Like if you're cooking a piece of steak, you can put a temperature probe in and know that steak is 120. Is that done? Some people would say yes. A lot of people would say no. How do we know what range gets to an acceptable cutting range? Is there an accepted range for every specific vegetable that it is sufficiently cuttable at this number? What our expert is saying, and the patent supports, is that you don't need a specific numerical value. The claims don't say exactly at this point. How do you know when the claim limitation is being satisfied? That's the problem. I don't see. I read this expert testimony. I don't see any expert testimony. Yes, he talks about using this device to measure, but he doesn't say what measurements would be within the claim limitation. And he didn't need to, just like we don't need to for a thermometer. And it's binary. It's going to be easier. I mean, if you stick the thermometer in anything and it gives you a number, that still doesn't tell you whether that's within the range covered by the patent. But a person of ordinary... You've got to know what the range is. Not when the claims themselves don't say this is the specific range you're going to. It's either you've reduced the resistance to cutting or not. And there's no evidence from the defendants that... What's the numerical value that qualifies as reducing the resistance to cutting? That is something, again, with like a thermometer that's more familiar to me, at least, that is well known to the person of ordinary skill in the art. And we're here on summary... Is it your view that any reduction in resistance to cutting that's different than what the vegetable previously was is sufficient? It's just a really broad claim? It is a broad claim because it covers all types of produce. So are you... I'm asking you a specific question. Yes. I was asking, let me try again. I was saying, is it your view that in order to reduce the resistance to cutting means any amount of reduction in resistance to cutting? Is that what you're saying? I think that's a fair reading and certainly at the summary judgment stage should be inferred in our favor. I think you can also compare it... We are operating with a claim in the context of a prior art system, right? So the person of ordinary skill in the art was already preparing produce for cutting and cooking. And so the person of ordinary skill in the art already had knowledge of what that level should be. And so what we... What is the level? Your witness never said what the level was. He said, use this device, but he didn't say, I read this device and if there's this reading on the device, that's reducing the resistance to cutting. He didn't say that. He didn't tell us that. And particularly in the light of the specification, which seems to define resistance to cutting as being something that's fairly complicated. Let me offer two points. There's no evidence from the defendants on this, and this is, of course, their burden both at summary judgment and on validity as clear and convincing evidence. And again, this is not... Our expert used an analogy of a microwave, right? We can figure out how to get the food hot enough. And there's a range of what that is, but it's hot enough. And it might vary, but I know when it's going to be hot enough. A person using... A person of skill in the art knowing a texturometer, particularly because...  Yeah. Hot enough for what? And I thought the invention was trying to not heat it. Right. And maybe in that... That wasn't the best analogy. But in terms of already knowing what you want the produce to get to, you want it to be at a certain texture so that it's easier to cut. The person of ordinary skill in the art already had that goal, was aware of those values, those numerical values. The patent didn't need to reteach all of that. Where does your expert say that someone who posed it would know what the values were? I don't see that in the testimony. Your Honor, I think it's a fair inference, again, between the patent itself, which talks about Appendix 149, the background... So your answer is the expert did not testify about that? He didn't provide numerical values. I mean, if this is so easy and everybody that's a skilled artist would know, for a carrot, the range would be X. For a potato, the range would be Y. For a green bean, the range would be Z. Then why isn't there anything remotely saying that in the record? All you have is this vague thing saying, well, everybody knows what it would be for all the different vegetables. But how? I mean, they've got to be on notice of whether they're infringing or not based upon what range they're cutting in. And they had that knowledge based on the prior art process. And so using a different technology to achieve the same thing, you're still... Who said that? That's in the patent. The patent is replacing. In Column 1, it talks about the prior art process. There was one process, and it was putting the produce in a hot water bath for a long period of time. And you did that to achieve reduced cutting resistance. And our patent is very specific. Okay, but there's no indication of what in the prior art was meant to reducing cutting resistance either. I don't know that I can point Your Honor to that, but that isn't an argument that the defendants pursued with any testimony of their own that it somehow is difficult to figure this out. Our expert says the person of ordinary skill... Was this an issue below this particular term? Yes. I mean, it's a one-step claim, so it was. And it's defendant's burden to prove that this was somehow indefinite. And when you have the person of ordinary skill in the art operating against a prior art process that knew how to use a texturometer, stick it in, and see if it's easier to cut, you can do the same thing through a different technology. That's what our patent is claiming. It's replacing one step in the prior art process with a different technology to get to the same point. And there's been no suggestion that a person of ordinary skill in the art didn't know how to figure that out with a texturometer. I see that I'm into my rebuttal. I would just like to emphasize that we are here on summary judgment. There is intrinsic and extrinsic evidence, including the expert report I pointed to, and the district court misunderstanding functional claiming. And I think our conversation this morning relates to that because these are claims that are achieved and their definiteness is promoted by the function they are performing. I'll save the rest of my time for rebuttal.  Thank you. Good morning. I'm Brian Beroker on behalf of J.R. Simplot. I want to start with the fundamental premise, which is that the understanding that McCain is urging that summary judgment somehow, that this issue should be treated as if it's a factual dispute that needs to go to the jury. Two problems with that. This court's Berkheimer presidential opinion says that indefiniteness is reviewed for clear error, and any factual issues are reviewed. I'm sorry. The ultimate question of indefiniteness is reviewed de novo, and any factual issues are reviewed for clear error. That means that the court can and often does decide issues of summary judgment. The actual posture in Berkheimer was a summary judgment decision. Berkheimer cites the Cox v. Sprint case in which the court there decided the issue on summary judgment. So the idea that this is an issue that goes to the jury? I'm sorry to interrupt you, but I think what I hear you saying is because you have to do claim construction, if you can't construe a claim, then the claim is indefinite, and claim construction is something for the judge, it's that this is not something that should be going to the jury regardless of whether there's factual questions or not. Correct. The court has no obligation to send this issue to the jury, and there's no presidential opinion of this court that says that indefiniteness factual questions have to go to the jury. There's been cases that say it can if it wants to send those issues to the jury, but there's no case, and certainly the Teva decision wasn't indefinite in this case. The Supreme Court's Teva decision in which it said these factual issues should be decided by the court is a precedential, obviously, decision that this court has to follow. So with that, on this record, there is no record to support the idea, the points your honors were making, that a person of skill in the art would know how to measure ease of cutting. There's no quantitative measurement, like how much more does it need to be easier? That's not in the record. And there's also testimony that texturometers aren't like thermometers. Texturometers give multiple different force measurements. It's often a maximum, an average, an initial, and it's measuring it over the period of the cut. So as you pierce the fruit or vegetable, there's going to be one force, but as you enter the fruit or vegetable, there's going to be different forces that are needed to make the cut. You measure all of those things. And even in their own record, a McCain documented appendix 8427, this is an internal document of theirs that shows that these force measurements can lead to eight different types of measurements. So there's nothing in this record to say which of these measurements you would use to make this ease of cutting assessment. So there's multiple problems, even with the ease of cutting piece of the claim alone. And then there's also additional problems with the preheating step. As your honors were alluding to earlier, when you do this application of the electric field, you can't heat the fruit or vegetable to what is a preheating step. But what does that mean? It depends on the fruit or vegetable. The patent specification gives one example of what a preheating step may be for a potato. There's nothing in this record about what preheating would be for any other fruit or vegetable. So there's just no basis upon which a person of skill in the art will know ahead of time whether they are going to infringe because they don't know whether the field strength they're using is going to be strong enough to cause it to be easier to cut or not so strong as to cause it to be preheating. And on the back side, there's nothing in this record that enables the person of skill in the art to know whether they've actually infringed because they don't know whether they've made the fruit or vegetable easier to cut. So on that basis alone, this court can affirm the judgment of the District Court of indefiniteness. And that's the standard that, as Judge Hughes said earlier, you're reviewing judgments, not opinions. And this judgment is correct. My colleague didn't get to the other 112 issues, but the court's judgment below can also be affirmed on the written description and enablement grounds because this patent gives very few examples, and yet it covers any fruit or vegetable, any field strength so long as it's easier to cut. Under this court's precedence, that renders this claim lacking in written description and provides another reason to affirm the judgment below. So there's multiple bases under 112 that this judgment should be affirmed. Any questions, Your Honor, about the 112 issues? Any questions about any of the other issues that I'm happy to answer? But otherwise, I'll cede my time to my colleague from ALEA. Thank you. Mr. Grossberg. Ms. Grossberg. May it please the Court, Leslie Grossberg on behalf of the third-party defendants, ALEA and Food Physics. The district court was not obligated to accept McCain's experts' legal conclusions that it would have been easy or a skilled artisan would have known to carry out extensive testing and just inherently known what the objective bounds of the claim term are. McCain has tried to make an argument that on summary judgment, this was a question for the jury. Yes, it is. Sure. This is claim construction, so clearly it's de novo. But what if expert testimony, so extrinsic evidence, could resolve the indefiniteness issue? Is the court not obligated to look at extrinsic evidence to determine whether the patent is indefinite? No, I don't believe so, Judge Hughes. I think that under the Teva decision, that that is a subsidiary finding, a fact that is squarely within the province of the district court to decide without the question going to a jury. But it may not have to go to the jury, but doesn't the court have to look at the evidence? Well, I think that here McCain's own evidence, its own experts' testimony was undisputed. The district court considered his opinions and found that this term is indefinite. What is a high electric field? Dr. Floro said you have to test a bunch of different things to know. And in fact, because the skilled artisan would know to test for all these different variables to determine whether using the blade textometer method, whether something is easier to cut, that doing all that testing is necessary. And that's why this claim language just does not put the public on notice of what's claimed. And that's because even the specified preferred embodiment that is disclosed in the patent of 30 to 75 volts per centimeter, Dr. Floros himself testified that that might not constitute a high electric field based on the other conditions at play. And so in view of that, I think that the district court did consider and credit Dr. Floros' testimony. I think it was undisputed. The defendant certainly didn't dispute that part of his testimony. And based on McCain's own expert and applying McCain's own proposed construction of this claim term, found that it does not inform with reasonable certainty what is available to the public and what is claimed under the patent. Anything further? On the issue of whether or not the district court applied the correct standard for indefiniteness, I would just add that I think that the record does show that the district court was well aware that to invalidate a patent, the standard is clear and convincing evidence and that for indefiniteness specifically, at least in the district court's previous two claim construction orders, had recited that standard. And so I don't think that this is a situation where the district court instructed a jury on the wrong legal burden of proof. This is a situation where the district court clearly knew what the standard was and applied it appropriately. Thank you. Thank you. Ms. Sweezy? Thank you. Four brief points. The district court was absolutely obligated to accept our experts' testimony and draw inferences in our favor. This was summary judgment. The problem is you never pointed to any expert testimony about what it means to be easier to cut. You're right, Your Honor, and that's my second point. Because our experts said this is easy, and that's at appendix, specifically at appendix 7400. But it's not simply like you're saying this is definite because our experts said everybody would know what would make it definite. That's just conclusory. Not with the rest of his testimony, respectfully, Your Honor, where he talks about what's already known in the field, the prior art process and the texturometer. And particularly at summary judgment, if all we have missing is the listing of specific numerical values, that is not a basis to find undisputed facts. We disputed every fact that defendants put forward, and that's starting at appendix. Where does he tell us what numbers you'd use from the texturometer? He doesn't, Your Honor, and if that's all that's missing, that is not a basis for summary judgment. My third point is that we are not here on clear error. Why not? I mean, if those numbers are required to set the outer boundaries of this claim, and they're not in the patent claims, they're not in the specifications, and all his testimony is, well, everybody would know what all those numbers are for every specific vegetable at issue, that's a legal conclusion, not a factual conclusion, it sounds to me like. It's basically saying, well, it's not indefinite because everybody would figure it out, not how they would figure it out or that they would understand how to figure it out, just that they would know it. Everybody had already figured it out because people were already treating produce with this different technology but still measuring the exact same thing of the produce, is it easier to cut or not. And as the district court itself recognizes, it's just. If that was so apparent, then you would think you would have seen some, at least example of that in your expert opinion somewhere. Your Honor, again, because this is summary judgment, the inferences go in our favor. I mean, you can harp on summary judgment all you want, but this is claim construction, and I don't think the district court's even obligated to look at extrinsic evidence if it determines that the intrinsic evidence as a matter of law makes this indefinite. I did want to get to that point about the standard of review. This is not claim construction. We had a claim construction. There is a construction that the court gave. Defendants moved on to summary judgment. They did not ask for Rule 52 findings. In fact, they asked for summary judgment, and even on appeal, on the first page of Simplot's brief, it is still positing your decision as whether there is evidence for a reasonable fact finder, the juror, to find in McCain's favor. And on summary judgment, when they have the burden both at summary judgment and on invalidity, there is enough, and there are enough inferences. This is not clear error, and the cases that they cite either did exactly arise in claim construction. They were Hatch-Waxman cases where the judge itself is the fact finder, or they just even reach it. So those are not the same. We're over your time. Thank you. Thank all counsel. The case is submitted. That concludes our session for this morning.